## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BENJAMIN BRUCE**                                                    **CIVIL ACTION**

**VERSUS**                                                            **NO. 18-5323**

**KEITH DEVILLE**                                                     **SECTION: "F"(3)**


## REPORT AND RECOMMENDATION

     This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

     Petitioner, Benjamin Herman Bruce, is a state prisoner incarcerated at the Winn Correctional Center in Winnfield, Louisiana.  On October 14, 2010, he was charged in the Parish of Jefferson for aggravated arson in violation of La. Rev. Stat. § 14:51.[1]  On February 10, 2011, the bill of information was amended to include verbiage that the amount of damage was over $500.[2]  On March 23, 2011, after a jury trial, he was convicted as charged.[3]  On April 4, 2011, the trial court sentenced Bruce to a term of imprisonment of fifteen years at hard labor.[4]  The state

---

[1] St. Rec. Vol. 1of 8, Bill of Information, 10/14/10 (amended 2/10/11).
[2] Id.
[3] St. Rec. Vol. 1 of 8, Verdict, 3/23/11; Trial Minutes, 3/22/11; Trial Minutes, 3/23/11; St. Rec. Vol. 5 of 8, Trial Transcript, 3/22/11; St. Rec. Vol. 6 of 8, Trial Transcript(con't), 3/22/11; Trial Transcript, 3/23/11.
[4] St. Rec. Vol. 1 of 8, Sentencing Minutes, 4/4/11; St. Rec. Vol. 6 of 8, Sentencing Transcript, 4/4/11.

filed a multiple bill charging Bruce as a fourth felony offender.[5]  On June 2, 2011, the court found Bruce to be a fourth felony offender, vacated the original sentence and sentenced Bruce to a term of life imprisonment.[6]

Bruce filed a direct appeal to the Louisiana Fifth Circuit alleging the following claims: (1) the trial court erred in denying a motion to quash the bill of information; and (2) his sentence was excessive.[7]  On October 30, 2012, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction but vacated his sentence as excessive.[8]  On January 17, 2013, the trial court resentenced Bruce to a term of imprisonment of twenty-five years at hard labor.[9]

The Louisiana Supreme Court then denied Bruce's related writ application on April 26, 2013 without explanation.[10]  Bruce's conviction became final 90 days later, on July 25, 2013, when he did not file a writ application with the United States Supreme Court.

On August 12, 2013, Bruce filed an application for post-conviction relief with the state district court in which he raised the following claims for relief: (1) comments made by the prosecutor during opening statement and closing argument amounted to prosecutorial misconduct; (2) ineffective assistance of counsel in failing to object to the comments; and (3) the trial court erred in admitting "other crimes" evidence related to his prior convictions.[11]  The state district court did not address petitioner's prosecutorial misconduct claim, but denied Bruce's application on December 18, 2013, finding he failed to prove any deficiency in his counsels' performance or resulting prejudice and his claim relating to "other crimes" evidence was procedurally barred

---

[5] St. Rec. Vol. 1 of 8, Multiple Bill, 4/4/11.
[6] St. Rec. Vol. 1 of 8, Minute Entry, 6/2/11; St. Rec. Vol. 7 of 8, Multiple Bill Hearing, 6/2/11.
[7] St. Rec. Vol. 6 of 8, Appeal Brief, 2011-KA-0991, 3/23/12.
[8] State v. Bruce, 102 So.3d 1029 (La. App. 5th Cir. 2012); St. Rec. Vol. 6 of 8.
[9] St. Rec. Vol. 1 of 8, Re-Sentencing Minutes, 1/17/13.
[10] State v. Bruce, 112 So.3d 839 (La. 2013); St. Rec. Vol. 8 of 8.
[11] St. Rec. Vol. 1 of 8, Application for Post-Conviction Relief, 8/16/13 (signed 8/12/13).

under La. Code Crim. P. arts. 930.4 (B) and (C).[12]  The Louisiana Fifth Circuit found petitioner's claims of prosecutorial misconduct and improper use of other crimes evidence were procedurally barred, that there was and no error in the trial court's denial of the ineffective assistance of counsel claim and denied his related writ application on April 2, 2014.[13]  The Louisiana Supreme Court denied Bruce's writ application without stated reasons on March 6, 2015.[14]

While the foregoing proceedings were still ongoing, Bruce filed a supplemental post-conviction application with the state district court on November 18, 2013, in which he raised the following claims: (1) ineffective assistance of trial and appellate counsel for failing to successfully argue the motion to quash, object to the jury instructions, move for a mistrial or new trial, and raise issues on appeal; (2) sufficiency of the evidence; and (3) prosecutorial misconduct in knowingly pursuing an invalid jury charge, failing to include on direct appeal transcripts of the opening statements, closing arguments, and jury instructions, and in making fraudulent statements in the appellate brief.[15]  The state district court found petitioner's ineffective assistance of counsel claims were speculative and unsupported by any facts, evidence or legal analysis as required by La. Code Crim. P. art.926, his claim of insufficient evidence and prosecutorial misconduct related to jury instructions were procedurally barred, and his remaining claims were not cognizable, and denied the application on May 23, 2014.[16]

Because Bruce had been transferred from the Louisiana State Penitentiary, he did not receive the May 23, 2014 order.[17]  On November 6 and 12, 2015, Bruce requested a copy of the

---

[12] St. Rec. Vol. 2 of 8, Order, 12/18/13.
[13] State v. Bruce, No. 14-KH-72 (La. App. 5th Cir. April 2, 2014);St. Rec. Vol. 3 of 8.
[14] State ex rel. Bruce v. State, 161 So.3d 7 (La. 2015); St. Rec. Vol. 4 of 8; St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 14 KH 1003, 5/13/14.
[15] St. Rec. Vol. 1 of 8, Application for Supplemental Post Conviction Relief with Memorandum of Law in Support/Request for Evidentiary Hearing, 11/18/13 (signed 11/7/13).
[16] St. Rec. Vol. 2 of 8, Order, 5/23/14.
[17] St Rec. Vol. 2 of 8, Return Indicating Return Without Service, 6/2/14.

May 23, 2014 order.[18]  The state district court sent Bruce a copy of the May 23, 2014 order on

November 18, 2015.[19]  Bruce filed a writ application with the Louisiana Fifth Circuit Court of

Appeal on March 31, 2016.[20]  On May 4, 2016, the Louisiana Fifth Circuit found that even if

Bruce did not receive a copy of the May 23, 2014 state district court order until November 18,

2015, he waited until March 31, 2016 to file his writ application, and therefore refused to the writ

application pursuant to Rule 4-3 of the Uniform Rules – Court of Appeals.[21]  On July 25, 2016,

Bruce filed a related writ application with the Louisiana Supreme Court.[22]  On November 7, 2016,

the Louisiana Supreme Court found the writ application was untimely pursuant to La. S. Ct. Rule

X § 5 and declined to consider it.[23]

In the interim, on October 20, 2014, Bruce filed a second application for post-conviction

relief with the state district court in which he alleged that: (1) the bill of information was defective;

(2) the prior convictions used to sentence him as a fourth felony offender were constitutionally

infirm; (3) his habitual offender sentence violated double jeopardy; and (5) the multiple bill

hearing should have been conducted by a jury.[24]  That application was found to be successive and

therefore procedurally barred and denied by the state district court on February 10, 2015.[25]

The Louisiana Fifth Circuit Court of Appeal then denied his related writ application on

May 28, 2015, finding his first claim procedurally barred and his remaining claims not

---

[18] St. Rec. Vol. 3 of 5, Letter, 11/9/15 (signed 11/6/15); Letter, 11/17/15 (signed 11/12/15).
[19] St. Rec. Vol. 3 of 8, Response to Request for Information and/or Documents, 11/18/15.
[20] St. Rec. Vol. 8 of 8, 5th Cir. Writ Application, 16-KH-192, 3/31/16.
[21] State v. Bruce, No. 16-KH-192 (La. App. 5th Cir. May 4, 2016); St. Rec. Vol. 3 of 8.
[22] St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 16 KH 1515, 8/9/16 (mailed 7/25/16).
[23] State ex rel. Benjamin Bruce v. State, No. 2016-KH-1515 (La. Nov. 7, 2016); St. Rec. Vol. 8 of 8.
[24] St. Rec. Vol. 2 of 8, Uniform Application for Post-Conviction Relief and Request for Evidentiary Hearing, 10/27/14 (signed 10/20/14).
[25] St. Rec. Vol. 2 of 8, Order, 2/10/15.

cognizable.[26]  He thereafter filed a writ application with the Louisiana Supreme Court, which the court denied on May 13, 2016, adopting the reasoning of the state district court.[27]

In the meantime, on March 24, 2015, Bruce filed a federal *habeas* corpus application in which he raised the following claims: (1) ineffective assistance of trial and appellate counsel for failing to (a) object to the prosecution's proposed jury instructions; (b) request a mistrial and file a motion for new trial; (c) successfully argue the motion to quash; (d) object to the jury instructions; (e) submit an adequate appellate brief; and (f) assert three "potentially critical" assignments of error; (2) prosecutorial misconduct by proposing invalid jury instructions, and waiving the inclusion of the transcripts of opening statement, closing argument, and jury instructions in appellate record on direct appeal.[28]  The state filed an answer conceding that the application was timely but arguing that it should nevertheless be dismissed because petitioner failed to exhaust his remedies in the state courts.  On August 24, 2015, this Court recommended Bruce's petition be dismissed without prejudice.[29]  On October 21, 2015, the District Court adopted the report and recommendation and dismissed the case without prejudice.[30]  Bruce appealed and the Fifth Circuit Court of Appeals dismissed the appeal on January 5, 2016 for want of prosecution due to failure to pay the filing fee.[31]

Following the Louisiana Supreme Court's May 13, 2016 denial of relief relating to his October 20, 2014 application for post-conviction relief, Bruce filed a "Response and Answer in Compliance to Louisiana Supreme Court Judgment" on May 25, 2016.[32]  The state district court

---

[26] State v. Bruce, No. 15-KH-274 (La. App 5th Cir. May 28, 2015; St. Rec. Vol. 3 of 8.
[27] State ex rel. Bruce v. State, 190 So.3d 1177 (La. 2016) (per curiam); St. Rec. Vol. 8 of 8.
[28] St. Rec. Vol. 2 of 8, Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, 4/17/15.
[29] St. Rec. Vol. 3 of 8, Report and Recommendation, 8/24/15.
[30] Bruce v. Deville, Civ. Action No. 15–1008, 2015 WL 6440336 (E.D. La. Oct. 21, 2015).
[31] Bruce v. Deville, 15-31044 (5th Cir. Jan. 6, 2015).
[32] St. Rec. Vol. 3 of 8, Response and Answer in Compliance to Louisiana Supreme Court Judgment, 5/31/16 (signed 5/25/16).

5

denied the motion as successive on June 2, 2016.[33]  On August 16, 2016, the Louisiana Fifth Circuit denied Bruce's related writ application.[34]  On January 12, 2018, the Louisiana Supreme Court denied Bruce's related writ application finding he had previously exhausted his right to state collateral review.[35]

Bruce next filed a motion for correction of illegal sentence on January 27, 2017, which the state district court denied on January 31, 2017.[36]  On April 3, 2017, the Louisiana Fifth Circuit denied the related writ application.  On January 12, 2018, the Louisiana Supreme Court also denied relief.[37]

On May 16, 2018, Bruce filed the instant federal application seeking *habeas* corpus relief alleging the following claims: (1) his conviction is unconstitutional due to improper admission of evidence unrelated to the case and submission of an altered verdict form and jury instructions on direct appeal; (2) ineffective assistance of counsel for allowing the state to "whitewash" the trial and for failing to submit a responsive appellate brief; (3) prosecutorial misconduct by filing an invalid bill of information, presenting perjured testimony, introducing unrelated crime scene photographs, and submitting altered jury instructions and verdict form on appeal; and (4) he was sentenced as an habitual offender sentence in violation of double jeopardy.[38]

---

[33] St. Rec. Vol. 3 of 8, Order, 6/2/16.
[34] State v. Bruce, No. 16-KH-440 (La. App. 5th Cir. Aug. 16, 2016); St. Rec. Vol. 3 of 8.
[35] State ex rel. Benjamin Bruce v. State, No. 2016-KH-1669 (La. Jan. 12, 2018).
[36] St. Rec. Vol. 3 of 8, Motion for Correction of an Illegal Sentence/Vacate the Habitual Offender Adjudication – Nullify Conviction and Sentence Pursuant to Art. 882, La. C.Cr. P., 1/27/17; Order, 1/31/17.
[37] State ex rel. Benjamin Bruce v. State, No. 2017-KH-0920 (La. Jan. 12, 2018); St. Rec. Vol.8 of 8.
[38] Rec. Doc. 1.

The state challenges the timeliness of petitioner's application. The state alternatively argues that Bruce failed to exhaust some of his claims and his remaining claims are procedurally barred.[39] Bruce filed a reply.[40]

The Court is compelled to note that the state's calculation is wrought with legal and factual errors. For the reasons set forth below, the Court rejects the state's timeliness argument and proceeds to a review of the claims.

## Timeliness

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." 28 U.S.C. § 2244(d)(1)(A).[41] On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Here, the Louisiana Supreme Court denied petitioner's direct-review writ application on April 26, 2013. Accordingly, his state criminal judgment became final for AEDPA purposes, and his federal limitations period therefore commenced, on July 25, 2013, when his period expired for

---

[39] Rec. Doc. 14.

[40] Rec. Doc. 16.

[41] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

seeking review by the United States Supreme Court. His limitations period then expired one year later on July 25, 2014, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must " 'conform with a state's applicable procedural filing requirements,' " such as timeliness and location of filing. Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n. 4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed by a prisoner. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.' " Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until " 'further appellate review [is] unavailable under [Louisiana's] procedures.' ").

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dilworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior

8

conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

In Bruce's case, after 18 days, petitioner tolled his federal limitations period by filing a post-conviction application with the state district court on August 12, 2013. Tolling then continued uninterrupted for the duration of that post-conviction proceeding, so long as he sought supervisory review in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004). Here, the state concedes that petitioner's writ application to the Louisiana Fifth Circuit relating to his first application for post-conviction relief was timely and that tolling continued until the court denied the writ application on April 2, 2014. Bruce had 30 days thereafter, until May 2, 2014, to file his writ application with the Louisiana Supreme Court. See La. S. Ct. Rule X§ 5. Bruce, however, did not file his writ application until May 5, 2014.[42] That writ application therefore was not timely filed under La. S. Ct. Rule X§ 5 and, under federal law, cannot be considered in the AEDPA's finality or limitations calculation. See Butler, 533 F.3d at 317, 319 (La. S. Ct. R. X§ 5(a) forbids any extension of time); Williams, 217 F.3d at 309-11 (same).

That said, petitioner's federal limitations period did not resume running on May 3, 2014, because he was entitled to an overlapping period of tolling. Specifically, Bruce filed his supplemental application for post-conviction relief on November 18, 2013 and the state district

---

[42] St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 14 KH 1003, 5/13/14 (dated 5/5/14).

court denied that application on May 23, 2014.[43]  Bruce had until June 23, 2014 to file a writ application with the Louisiana Fifth Circuit.[44]  See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007).  Bruce did not file his writ application with the Louisiana Fifth Circuit until March 31, 2016, and the Louisiana Fifth Circuit found it untimely on May 4, 2016.

The United States Supreme Court has conclusively held that "time limits, no matter their form, are 'filing' conditions"; when the state courts have rejected a state application as untimely, it cannot be considered "properly filed" so as to entitle the petitioner to statutory tolling.  Pace, 544 U.S. 408 at 417.  Simply put: "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)."  Id. at 414 (internal quotation marks and brackets omitted).  Because the Louisiana Fifth Circuit Court of Appeal expressly found that the writ application relating to the denial of his supplemental application for post-conviction relief was untimely and refused to consider it on that basis, petitioner receives no tolling credit whatsoever for that application.  Villafranco v. Goodwin, Civ. Action No. 14-2329, 2015 WL 1525950, at *3 (E.D. La. Apr. 2, 2015); accord Williams v. Cain, 217 F.3d 303 (5th Cir. 2000); Joseph v. Vannoy, Civ. Action No. 16-0546, 2016 WL 4433640, at *4 (E.D. La. June 10, 2016), adopted, 2016 WL 4419004 (E.D. La. Sept. 19, 2016); Campbell v. Cain, Civ. Action No. 06–3983, 2007 WL 2363149, at *3 (E.D. La. Aug. 15, 2007).[45]  As result, tolling then ended on June

---

[43] The state's time calculation fails to account for this application.

[44] In this case, the thirtieth day of that period fell on a Sunday, June 22, 2014, and, therefore, petitioner had until Monday, June 23, 2014, to file a writ application with the Louisiana Fifth Circuit Court of Appeal.  See La. Code Crim. P. art. 13; La. Rev. Stat. § 1:55.

[45] After the Louisiana Fifth Circuit declined to consider his writ application, Bruce had until June 3, 2016 to file his writ application with the Louisiana Supreme Court.  La. S. Ct. R. X, § 5.  He did not file that writ application until July 25, 2016.  The untimeliness of the pleading was the basis for Louisiana Supreme Court's decision not to consider the writ application.  Under federal habeas law, a writ application which fails to comply with La. S. Ct. Rule X§ 5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the

23, 2014, when his period expired for seeking review by the Louisiana Fifth Circuit Court of Appeal.  See Grillette, 372 F.3d at 769-71.

The time therefore began running again on June 24, 2014 and ran for another 118 days until October 20, 2014 when Bruce filed his second application for post-conviction relief.[46]  The state court denied the application for post-conviction relief on February 10, 2015.[47]  The state argues that Bruce's related writ application to the Louisiana Fifth Circuit was not timely filed and therefore the time began to run for another 46 days.[48]  However, the record reflects that, due to Bruce's late receipt of the order denying post-conviction relief, the state district court set a return date for June 19, 2015.[49]  Bruce filed his writ application with the Louisiana Fifth Circuit on April 27, 2015.[50]  The time therefore continued to be statutorily tolled through May 13, 2016, when the Louisiana Supreme Court denied relief.[51]

The time began to run again on May 14, 2016 and ran for another 11 days until May 25, 2016 when Bruce filed his "Response and Answer in Compliance to the Louisiana Supreme Court Judgment" which was construed as a successive application for post-conviction relief.[52]  The time

---

AEDPA's statute of limitations and tolling doctrines.  Butler, 533 F.3d at 318-19; Larry v. Dretke, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); Wardlaw v. Cain, 541 F.3d 275, 279 (5th Cir. 2008).

[46] St. Rec. Vol. 2 of 8, Uniform Application for Post-Conviction Relief and Request for an Evidentiary Hearing, 10/27/14 (signed 10/20/14).

[47] St. Rec. Vol. 2 of 8, Order, 2/10/15.

[48] Bruce filed his first federal *habeas* corpus application on March 24, 2015 which was eventually dismissed by the Fifth Circuit on January 5, 2016.  That clearly has no bearing on the timeliness of the instant application.  The United States Supreme Court has expressly held that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)" and, therefore, a prior federal application does not toll the AEDPA's statute of limitations.  Duncan v. Walker, 533 U.S. 167, 181–82 (5th Cir.2001).

[49] St. Rec. Vol. 3 of 8, Order, 5/18/15.

[50] The state court record does not include a complete copy of Bruce's writ application; rather it includes only a letter and the cover page of the application.  St. Rec. Vol. 8 of 8, 5th Cir. Writ Application, 15-274, 4/27/15.

[51] State ex rel. Bruce, 190 So.3d at 1177; St. Rec. Vol. 8 of 8, La. Supreme Court Order, 15-KH-1131, 5/13/16

[52] St. Rec. Vol. 3 of 8, Response and Answer in Compliance to Louisiana Supreme Court Judgment, 5/31/16 (signed 5/25/16); Order, 6/2/16.

continued to be statutorily tolled through January 12, 2018 when the Louisiana Supreme Court denied relief.[53]

When Bruce's federal limitations period finally began running again on January 13, 2018, 147 days had passed and he had 218 days remaining. Therefore, he had until Monday, August 20, 2018[54], either to file his federal application or to again toll the limitations period. Because Bruce filed the instant petition on May 16, 2018, the undersigned finds that was timely filed and will therefore address the merits of petitioner's claims.

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28

---

[53] Bruce is entitled to yet another overlapping period of tolling commencing on January 27, 2017 when he filed a motion to correct illegal sentence. See Sampia v. Cain, No. 99–30694, 48 F. App'x 916, 2002 WL 31114916, at *4 (5th Cir. Sept. 9, 2002) (a motion to correct an illegal sentence qualifies as a motion for "other collateral review" for tolling purposes). The time continued to be tolled until the related writ application was denied by the Louisiana Supreme Court on January 12, 2018.

[54] Because the one year deadline fell on Sunday, August 19, 2018, the federal limitations period was extended through the following Monday, August 20, 2018. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct. The

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer

to the state court's decision on the merits of such a claim unless that decision "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>,

535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has

explained:

> A state court decision is contrary to clearly established precedent if the state court
> applies a rule that contradicts the governing law set forth in the [United States]
> Supreme Court's cases. A state-court decision will also be contrary to clearly
> established precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme Court and
> nevertheless arrives at a result different from [United States] Supreme Court
> precedent.

<u>Wooten v. Thaler</u>, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has

held: "[A] state-court decision is an unreasonable application of our clearly established precedent

if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a

particular prisoner's case."  White v. Woodall, 530 U.S. ____, 134 S. Ct. 1697, 1706 (2014).

However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard

> against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.  White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this

case as follows:

> Ms. Pinkey Miles resided in a trailer located at 623 Richard Avenue in River Ridge, Louisiana, with her sixty-five year-old mother, Barbara Brown, and her seventeen year-old son, Kendrick Miles.  On the afternoon of August 26, 2010, Ms. Miles played a game of cards and had a few drinks with neighbors.  Ms. Miles testified that her ex-boyfriend, defendant, later arrived to play and that she asked him to return ten dollars she had previously loaned him.  When defendant refused to pay the ten dollars, Ms. Miles punched defendant in the face and left.[1]  Ms. Miles eventually returned home and, sometime after midnight, Ms. Miles, her mother and her son fell asleep.
>
> [1]Defendant, in his statement to investigating authorities, stated that Ms. Miles used "brass knuckles" when she hit him.  One neighbor, Ms. Jatawn Kinzey, further testified that Ms. Miles showed up with two teenage boys "punching their hands" in front of defendant.  However, Ms. Miles and another neighbor-witness, Ms. Lathers, testified that Ms. Miles had rings on her fingers but did not use any weapons when she struck defendant.
>
> A few hours later, two unknown individuals broke down the gate outside of Ms. Miles' trailer, pushed a window air conditioning unit through the window, and yelled into the trailer, "Ya'll house is on fire.  Ya'll house is on fire."  Ms. Miles

15

ran out of the trailer and extinguished the fire while her son, Kendrick, helped his grandmother, Ms. Brown, exit the trailer safely.

At trial, Ms. Danielle Lathers, a neighbor-witness, testified that she observed defendant and Ms. Miles in a heated dispute on the evening of August 26, 2010, regarding an unpaid debt and witnessed Ms. Miles strike defendant in the face. Ms. Lathers further testified that she and her boyfriend, while sitting on her porch at approximately 3:30 a.m., noticed defendant's pick-up truck traveling down the road to Ms. Miles' trailer. Ms. Lathers and her boyfriend walked to the corner and noticed defendant exit the truck with something in his hand. Ms. Lathers testified that defendant walked to Ms. Miles' trailer and then walked back to his truck. A few minutes later, she noticed smoke coming from the trailer. Ms. Lathers did not contact police regarding the incident; she testified that defendant's actions involving Ms. Miles' trailer is not her "business." Ms. Lathers further stated that she did not walk to Ms. Miles' trailer that evening to inform her of the smoke but instead retired to her home for the evening.

Investigator Thomas Lowe of the Jefferson Parish Fire Department, an expert in the field of fire origin and cause, testified that he arrived at the scene and determined that the fire began in the garden area and was ignited with an accelerant, gasoline.[2] Mr. Lowe further testified that the fire spread in a V-pattern from the garden area, "up to the top of the trailer."

[2]Detective Lowe obtained a soil sample from the garden area, which lab tests revealed contained gasoline. The parties further stipulated to the testimony of Thomas Angelico, an expert in the field of fire debris, who examined the soil sample and confirmed the presence of gasoline.

Deputy Latasha Thomas of the Jefferson Parish Sheriff's Office also reported to the scene. Ms. Miles told Deputy Thomas that she suspected her ex-boyfriend (defendant) could be responsible for the fire. Detective Steven Abadie of the Jefferson Parish Sheriff's Office later arrived and learned from Ms. Miles of a potential neighbor-witness, Ms. Lathers. Detective Abadie met with Ms. Lathers, who identified defendant by photograph as the perpetrator. Detective Abadie took Ms. Lathers' recorded statement. Having obtained defendant's address from Ms. Lathers, Detective Abadie proceeded to defendant's residence and arrested him for the aggravated arson of Ms. Miles' trailer.

Detective Abadie testified that he advised defendant of his rights and transported him to the police station, where defendant gave a recorded statement. In his statement, defendant told Detective Abadie that on the afternoon of August 26, 2010, Ms. Miles struck him in the face with a pair of brass knuckles over an unpaid debt of ten dollars. Defendant then admitted that in the early morning hours of August 27, 2010, he became intoxicated, poured gasoline on the flower bed in front of Ms. Miles' trailer, and set it afire.[55]

---

[55] State v. Bruce, 102 So.3d 1029, 1031-33 (La. 5th Cir. 2012); St. Rec. Vol. 6 of 8.

**Petitioner's Claims[56]**

**Prosecutorial Misconduct/Unconstitutional Conviction**

Bruce claims prosecutorial misconduct as a result of issuing an invalid bill of information, presenting perjured testimony from a convicted felon, introducing into evidence unrelated crime scene photographs, and submitting altered jury instructions and verdict form on appeal.  In a separately enumerated but overlapping claim, he contends that his conviction is unconstitutional due to the admission into evidence of the unrelated crime scene photographs and the prosecution's submission on appeal of altered jury instructions and the verdict form.

The record reflects that Bruce never raised claims of prosecutorial misconduct based on perjured testimony or an invalid bill of information to any of the state courts.  While he did not raise these issues in his first application for post-conviction relief, he raised the issue of prosecutorial misconduct based on admission of a photograph from an unrelated crime scene and the filing of altered jury instructions and verdict form on appeal in his related writ application to the Louisiana Supreme Court.[57]  In his second application for post-conviction relief, while not enumerating it as a separate claim, he referenced the prosecution's use at trial of a photograph that was unrelated to the case.[58]  Thus, it does not appear that any of the prosecutorial misconduct claims have been exhausted.  Nevertheless, it is clear that a federal court has the authority to deny habeas claims on the merits regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state.  28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d

---

[56] For ease of analysis, this Report and Recommendation addresses petitioner's claims in a different order than they were listed in his federal application and consolidates two of his claims.

[57] St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 14 KH 1003, pp. 10-13, 5/13/14.

[58] St. Rec. Vol. 2 of 8, Uniform Application for Post-Conviction Relief and Request for an Evidentiary Hearing, pp. 10-11, 10/27/14 (signed 10/20/14).

285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n. 8 (E.D. La. May 13, 2008).

Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." United States v. Duffaut, 314 F.3d 203, 210 (5th Cir. 2002). A court first decides whether the prosecutor's actions were improper and, if so, the court then determines whether the actions "prejudiced the defendant's substantive rights." Id. With respect to that latter determination, the court asks whether the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." Foy v. Donnelly, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted). Therefore, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982).

Initially, Bruce claims that the bill of information was invalid. On the second day of trial, Bruce's trial counsel filed a motion to quash the bill of information alleging that it was fatally defective for failure to allege that it was reasonably foreseeable that human life might be endangered and that the arson occurred to a structure, water or movable.[59] That same day, Bruce filed a pro se motion for mistrial based on the same defects in the the bill of information.[60] The trial court denied the motions after argument.[61]

On direct appeal, the Fifth Circuit, in denying his claim, explained as follows:

In his first assignment of error, defendant asserts that the trial court erred in denying his motion to quash the bill of information. On the second and final day of trial[5], defendant filed a motion to quash the bill of information contending that

---

[59] St. Rec. Vol. 1 of 8, Motion to Quash, 3/23/11.
[60] St. Rec. 1 of 1, Motion for Mistrial, 3/23/11.
[61] St. Rec. Vol. 1 of 8, Trial Minutes, 3/23/11; St. Rec. Vol. 6 of 8, Trial Transcript, pp. 99-114, 3/23/11.

it failed to properly inform him of the charge against him as required under La. C. Cr. P. art. 464 and the Louisiana Constitution of 1974, art. I, § 13. Specifically, defendant claims the indictment at issue is defective because it fails to allege foreseeability of endangering human life and fails to state that arson occurred to a structure, watercraft, or moveable as provided in La. R.S. 14:51.

[3]The state argues that because defendant filed his motion to quash after the commencement of trial, his motion is untimely under La. C. Cr. P. art. 535(A)(2). However, the Louisiana Supreme Court has held that a motion to quash the bill of information may be urged at trial prior to verdict. Further, a defendant's objection at trial to an indictment preserves the issue for appellate review. See State v. James, 305 So.2d 514 (La. 1974) and State v. Pichler, 355 So.2d 1302, 1304 (La.1978).

     The purpose of a bill of information is to inform a defendant of the nature and cause of the accusation against him as required by the Louisiana Constitution, art. I, § 13. State v. Stevenson, 02–769 (La. App. 5 Cir. 1/28/03), 839 So.2d 340, 345, writ denied, 2003–0833 (La.10/31/03), 857 So.2d 472. The requirements of a bill of information are set forth in La. C. Cr. P. art. 464, which provides:

     The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

State v. Michels, 98–608 (La. App. 5 Cir. 1/13/99), 726 So.2d 449, 451.

     In the present case, defendant's charge is aggravated arson in violation of La. R.S. 14:51, which provides, "[a]ggravated arson is the intentional damaging by any explosive substance or the setting of fire to any structure, watercraft, or moveable whereby it is foreseeable that human life might be endangered." La. C. Cr. P. art. 465 authorizes the use of short-form indictments in charging certain offenses. State v. Page, 08–531, p. 16 (La. App. 5 Cir. 11/10/09), 28 So.3d 442, 453, writ denied, 2009–2684 (La. 6/4/10), 38 So.3d 299. The Louisiana Supreme Court has consistently upheld the constitutionality of short-form indictments. Id. The crime of aggravated arson is chargeable by short form as follows:

     A.B. committed aggravated arson of a dwelling (or structure, watercraft, or movable, as the case may be). If the words "belonging to another and with the damage amounting to _____ dollars" are added, simple arson will be included in the charge.

     The Louisiana Supreme Court has specifically approved the use of this short-form indictment to a charge of aggravated arson. State v. Mason, 305 So.2d 523, 526 (La.1974).

     In the present case, defendant does not claim that the alleged defective bill of information prejudiced his defense in any way.[4] Rather, his allegation is that the bill of information is technically insufficient. The amended bill of information against defendant provides:

"Benjamin H. Bruce ... on the 27th day of August [2010] ... in the Parish [of Jefferson] ... violated R.S. 14:51 in that he did commit aggravated arson of 623 Richard Avenue, River Ridge, LA 70123 belonging to another Barbara Brown, and with the amount of damage being over $500."

[4]Although defendant does not claim prejudice in this case from the alleged defective indictment, we note that the record indicates the state provided open file discovery to defendant. The Louisiana Supreme Court has found the granting of open file discovery to the defense to be "significant in resolving whether or not defendant was prejudiced in preparation of his defense by an insufficient recitation of the essential facts constituting the offense charged." State v. Pichler, 355 So.2d 1302, 1304 (La.1978).

We find the bill of information in this case complies with the short form authorized by La. C. Cr. P. art. 465(A)(2). Accordingly, this assignment of error is without merit.[62]

The Louisiana Supreme Court denied Bruce's related writ application without assigning reasons.[63]

The sufficiency of a state charging instrument is not a matter for federal habeas relief unless it can be shown that the instrument is so defective that it deprives the state court of jurisdiction. McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), reh'g granted in part on other grounds sub nom., Williams v. Collins, 12 F.3d 70 (5th Cir. 1994) (per curiam). The United States Fifth Circuit Court of Appeals has observed that the sufficiency of a state charging instrument is fatally defective only when there are no circumstances under which there could be a valid conviction based on that instrument, and that "determination can be made *only* by looking to the law of the state." Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir.1984) (internal quotation marks omitted) (emphasis in original).

In denying petitioner's claim, the state courts obviously found that the charging instrument was legally sufficient as a matter of state law. "Where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue." McKay, 12 F.3d at 68;

---

[62] Bruce, 102 So.3d at 1033-34; St. Rec. Vol. 6 of 8.
[63] Bruce, 112 So.3d at 839; St. Rec. Vol. 8 of 8.

cf. Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co., 706 F.3d 622, 629 (5th Cir. 2013) ("The principle that state courts are the final arbiters of state law is well-settled."); Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)).

Moreover, and in any event, it is clear that the bill of information was in fact proper in this case. Louisiana law expressly authorizes the use of specific "short form" charging documents with respect to certain offenses, and the United States Fifth Circuit Court of Appeals has held that their use is constitutional. Liner, 731 F.2d at 1203-04. As the Louisiana Fifth Circuit explained, for an aggravated arson charge, a "short form" charging document suffices if it states that the accused "committed aggravated arson of a dwelling (or structure, watercraft, or movable, as the case may be)." La. Code Crim. P. art. 465(A)(2).[64] Here, the bill of information charged that Bruce committed "aggravated arson of 623 Richard Avenue, River Ridge, LA 70123 belonging to Barbara Brown" and that the amount of damage was over $500.[65] While the bill of information did not use the words "dwelling" or "structure," the address was provided. Furthermore, the testimony at a hearing held on January 3, 2011, made clear that Bruce was accused of setting fire to a trailer that was used as a residence.[66] The record also reflects that the prosecution advised at a hearing on February 10, 2011, that it intended to "amend the bill to reflect that the violation with

---

[64] Article 465 further provides: If the words "belonging to another and with the damage amounting to _____ dollars" are added, simple arson will be included in the charge." La. Code Crim. P. 465(A)(2).
[65] St. Rec. Vol. 1 of 8, Bill of Information, 10/14/10 (amended 2/10/11).
[66] St. Rec. Vol. 5 of 8, Hearing Transcript, 1/3/11.

regard to the aggravated arson was actually committed *upon a structure* belonging to another person, specifically Ms. Barbara Brown and with damage amounting to over $500."[67]

For these reasons, this Court has no basis for finding that the bill of information was defective or that the prosecutor committed any misconduct in issuing the bill of information. Accordingly, federal habeas corpus relief is not warranted with respect to these claims.

Bruce's claims that the prosecutor presented false testimony and evidence which resulted in an unconstitutional conviction also do not entitle him to relief.  A claim of prosecutorial misconduct, including the use of false testimony, presents a mixed question of law and fact.  Bolton v. Cain, Civ. Action No. 13–4572, 2014 WL 432943, at *11 (E.D. La. Feb. 4, 2014); Harvey v. Cain, Civ. Action No. 13–2994, 2013 WL 6490484, at *5 (E.D. La. Dec. 10, 2013).  Therefore, to obtain federal relief, petitioner must show that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  For the following reasons, it is clear that he has not made that showing.

The applicable law is clear that due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir.1996).  However, to obtain relief with respect to such a claim, a petitioner must show that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material.  Duncan v. Cockrell, 70 F. App'x 741, 744 (5th Cir.2003). "Evidence is 'false' if, inter alia, it is specific misleading evidence important to the prosecution's

---

[67] St. Rec. Vol. 5 of 8, Transcript, p. 6 (emphasis added), 2/10/11.

case in chief.  False evidence is 'material' only if there is any reasonable likelihood that it could have affected the jury's verdict."  Id.

In this case, Bruce claims that the prosecution knowingly presented perjured testimony from a convicted felon and photographs depicting an unrelated crime scene.  He fails to identify the witness he claims gave false testimony and further fails to identify the testimony he claims was false.  Similarly, he fails to identity which photographs depicted a crime scene other than the one at issue in this case.

The record demonstrates that Investigator Thomas Lowe, Jr., testified regarding photographs depicting damage to the trailer and immediate surrounding area.[68]  He confirmed that the photographs admitted into evidence were those that he took of the residence on Richard Avenue on August 27, 2010 and that they accurately reflected the scene.[69]  Barbara Brown identified photographs that she took the day after the fire depicting the scene as well as a photograph taken weeks later after the damage had been remediated.[70]

Bruce has presented no evidence that any testimony or photographs were false much less that the prosecution was aware of any false testimony or evidence.  On the contrary, petitioner's allegations are wholly conclusory and unsupported; as such, they fail to state a viable claim of prosecutorial misconduct.  See, e.g., Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (holding that bare allegations of prosecutorial misconduct do not establish due process violation).  Similarly, as there is no evidence that any of the photographs were unrelated to his case, Bruce's separate claim that his conviction is unconstitutional also fails.

---

[68] St. Rec. Vol. 6 of 8, Trial Transcript (con't), pp. 57-58, 60-63, 64-67, 3/22/11.
[69] Id.
[70] St. Rec. Vol. 6 of 8, Trial Transcript, pp. 82-84, 3/23/11.

Finally, the record does not support Bruce's claim that the jury instructions and verdict form included in the record on direct appeal were altered by the prosecutor. The jury instructions included in the state district court record, which have a file stamp from the state district court and were signed by the trial judge, are identical to those in the appellate record.[71] Furthermore, the trial transcript includes a verbatim reading of those same instructions.[72] Additionally, the appellate record includes an identical copy of the signed verdict form that is in the state district court record.[73] Bruce's unsubstantiated allegations of altered jury instructions and verdict form simply do not entitle him to federal habeas relief.

For all of these reasons, Bruce has failed to meet his burden of proof to establish that he is entitled to relief with respect to any of these claims.

### Ineffective Assistance of Counsel

Bruce raises several claims of ineffective assistance of counsel in his petition. Specifically, petitioner contends his trial counsel rendered constitutionally ineffective performance in allowing "the state to 'whitewash' the entire trial."[74] He further claims his appellate counsel failed to file an adequate responsive brief.

The clearly established federal law which governs ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a

---

[71] St. Rec. Vol. 1 of 8, Criminal Jury Charges, 3/23/11; St. Rec. Vol. 5 of 8, Criminal Jury Charges, 3/23/11.

[72] St. Rec. Vol. 7 of 8, Closing Statements and Jury Instructions Transcript, pp. 25-36, 3/23/11.

[73] St. Rec. Vol. 1 of 8, Jury Verdict, 3/23/11; St. Rec. Vol. 5 of 8, Jury Verdict, 3/23/11.

[74] Rec. Doc. 1, p. 7. The state correctly contends that this claim is unexhausted because Bruce failed to raise this claim in any of his applications for post-conviction relief. Nevertheless, as the claim is meritless, the Court will address it. 28 U.S.C. § 2254(b)(2); Jones, 163 F.3d at 299; Woods, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n. 8.

preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1988). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Matthson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793. On the other hand, to prove

25

prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. Briseno, 274 F.3d at 210.

Because ineffective assistance of counsel claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting such claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that

> has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S.
> ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation
> marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then

explained:

> Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective assistance
> claim can function as a way to escape rules of waiver and forfeiture and raise issues
> not presented at trial, and so the <u>Strickland</u> standard must be applied with
> scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very
> adversary process the right to counsel is meant to serve.  Even under *de novo*
> review, the standard for judging counsel's representation is a most deferential one.
> Unlike a later reviewing court, the attorney observed the relevant proceedings,
> 7knew of materials outside the record, and interacted with the client, with opposing
> counsel, and with the judge.  It is all too tempting to second-guess counsel's
> assistance after conviction or adverse sentence.  The question is whether an
> attorney's representation amounted to incompetence under prevailing professional
> norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of <u>Strickland</u> was unreasonable
> under § 2254(d) is all the more difficult.  *The standards created by <u>Strickland</u> and
> § 2254(d) are both highly deferential, and when the two apply in tandem, review is
> doubly so.*  The <u>Strickland</u> standard is a general one, so the range of reasonable
> applications is substantial.  Federal habeas courts must guard against the danger of
> equating unreasonableness under <u>Strickland</u> with unreasonableness under §
> 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions
> were reasonable.  The question is whether there is any reasonable argument that
> counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id.</u> at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective

assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the

benefit of the doubt."  <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added;

quotation marks omitted).  For the following reasons, the Court finds that, under those stringently

deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's

ineffective assistance of counsel claims.

Here, petitioner first contends that trial counsel was ineffective for knowingly and willingly

allowing the prosecution to "whitewash the entire trial."  As correctly noted by the state, petitioner

fails to support this claim with any facts and he provides no explanation or discussion in support

of that contention.  To prove prejudice, Bruce had to allege with 'specificity' why the outcome of

his trial would likely had been different had counsel performed differently.  <u>Barnard v. Collins</u>,

958 F.2d 634, 642 (5th Cir. 1992). ("In the absence of a *specific showing* of how these alleged

errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair

trial, we [can find] no merit to these [claims]") (emphasis added).  His mere allegation clearly does

not suffice to meet his burden of proof to establish that counsel performed deficiently.  On the

contrary, the United States Fifth Circuit Court of Appeals "has made clear that conclusory

allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal

habeas proceeding."  <u>Miller v. Johnson</u>, 200 F.3d 274, 282 (5th Cir. 2000).

Petitioner also alleges that appellate counsel was ineffective in failing to submit a

"competent" responsive brief.[75]  In his supplemental application for post-conviction relief, Bruce

raised his claim of ineffective assistance of appellate counsel in failing to prepare an adequate

brief.[76]  The state district court denied the claims finding:

> As the State surmises in its response, petitioner fails to outline a factual basis for relief as required under LSA-C.Cr.P. art.926.[77]  Rather, petitioner alleges conclusory claims which are speculative and unsupported by any facts, evidence, or legal analysis.  He provides absolutely no support of these claims.  Pursuant to LSA-C.Cr.P. art. 926, this claim (and sub-claims) will be denied.[78]

The Louisiana Fifth Circuit and the Louisiana Supreme Court refused to consider petitioner's

untimely writ applications.[79]

---

[75] Rec. Doc. 1, p. 7.
[76] St. Rec. Vol. 1 of 8, Application for Supplemental Post Conviction Relief with Memorandum of Law in Support/Request for Evidentiary Hearing, 11/18/13 (dated 11/7/13).
[77] La. Code Crim. P. Art. 926(b)(3) provides that an application for post-conviction relief must allege "[a] statement of the grounds upon which relief is sought, specifying with reasonable particularity the factual basis for such relief."
[78] St. Rec. Vol. 2 of 8, Order, 5/23/14.
[79] <u>State v. Bruce</u>, No. 16-KH-192 (La. App. 5th Cir. May 4, 2016); St. Rec. Vol. 3 of 8; <u>State ex rel. Benjamin Bruce v. State</u>, No. 2016-KH-1515 (La. Nov. 7, 2016); St. Rec. Vol. 8 of 8.

28

Bruce does not explain in his *habeas* petition how appellate counsel's appellate brief was constitutionally insufficient.  From a broad reading of his supplemental application for post-conviction relief, it appears that he claims that appellate counsel should have assigned as error on appeal claims of ineffective assistance of trial counsel and prosecutorial misconduct.

It is clear that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)."  West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).   Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions."  Id. at 753.  As a result, the applicable test to be applied in assessing such a claim is whether the issues ignored by appellate counsel were "clearly stronger" than the issues actually presented on appeal.  See, e.g., Diaz v. Quarterman, 228 F. App'x 417, 427 (5th Cir. 2007); accord Smith v. Robbins, 528 U.S. 259, 288 (2000).

It is a well-settled that Louisiana laws deems that claims of ineffective assistance of trial counsel are more properly raised in an application for post-conviction relief in the district court rather than on direct appeal.  State v. Watson, 817 So. 2d 81, 84 (La. 2002); State v. Truitt, 500 So. 2d 355, 359 (La. 1987); see also State v. Smothers, 836 So. 2d 559 (La. App. 5th Cir. 2002) (refusing to consider ineffective assistance of counsel claim on direct appeal); State v. Hall, 843 So. 2d 488 (La. App. 4th Cir. 2003) (same); State v. Griffin, 839 So. 2d 1148 (La. App. 3d Cir. 2003) (same).  As such, Bruce's appellate counsel did not act deficiently in failing to raise on appeal claims of ineffective assistance of trial counsel.  Even if the failure to do so could be

considered deficient, Bruce not prejudiced by the failure since the state appellate court likely would have deferred the claims to post-conviction review, which Bruce later pursued.

As for appellate counsel's failure to assign as error claims of prosecutorial misconduct, as explained above, petitioner's claims of prosecutorial misconduct lack merit. Failure to raise a meritless claim on appeal would not be deficient performance. See Anderson v. Quarterman, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit. As such, failure to raise these issues did not prejudice Anderson."); see also, Kossie v. Thaler, No. 09–20581, 2011 WL 1659395, at *3 (5th Cir. Apr. 28, 2011) (recognizing the Supreme Court's premise that only when ignored claims are stronger than those raised will the presumption of effectiveness be overcome) (citing Smith v. Robbins, 528 U.S. 259, 288 (2000) ).

Bruce has not shown that his appellate counsel failed to raise a nonfrivolous or potentially meritorious issue on direct appeal. He has not demonstrated any deficient performance on the part of his appellate counsel or shown any prejudice caused by counsel's failure to assert these meritless and unsupportable claims in his appeal.

The state court's denial of relief on these claim was not contrary to, or an unreasonable application of, Supreme Court law. Bruce is not entitled to relief on these issues.

### Enhanced Sentence Violates Double Jeopardy

Bruce's final claim is that his habitual offender sentence in not authorized by statutory law and violates double jeopardy. The state argues that this claim is procedurally barred.

Here, there is no question that petitioner's sentencing claim, which was raised in his third state post-conviction proceedings, was denied by the state courts on procedural grounds. In the last reasoned state court opinion addressing the claim, the Louisiana Supreme Court denied relief,

holding "relator's sentencing claims are not cognizable on collateral review. La.C.Cr.P. art. 930.3; State ex rel. Melinie v. State, 93-1380 (La. 1/12/96), 665 So.2d 1172; see also State v. Cotton, 09-2397 (La. 10/15/10), 45 So.3d 1030."[80]  All of those authorities clearly concern procedural matters. Specifically, article 930.3 limits the grounds on which a prisoner may seek post-conviction relief. The Melinie decision held that article 930.3 does not allow post-conviction challenges to sentencing errors; and Cotton held that article 930.3 and Melinie bar post-conviction claims alleging ineffective assistance of counsel in sentencing matters.

Moreover, federal courts have repeatedly held that article 930.3 and the Melinie and Cotton decisions are "independent" and "adequate" state rules to support a procedural bar in federal court. See, e.g., Hull v. Stalder, No. 99-31199, 2000 WL 1598016 (5th Cir. Sept. 28, 2000) (article 930.3 and Melinie are "independent" and "adequate" state grounds to support a procedural bar); Reavis v. Hedgeman, Civ. Action No. 15-1982, 2015 WL 7307329, at *6-7 (E.D. La. Nov. 6, 2015) (article 930.3, Melinie, and Cotton are "independent" and "adequate"), adopted, 2015 WL 7306440 (E.D. La. Nov. 19, 2015); Williams v. Vannoy, Civ. Action No. 14-1914, 2015 WL 3505116, at *6-7 (E.D. La. June 3, 2015) (same); Williams v. Strain, Civ. Action No. 13-2998, 2014 WL 5305634, at *5-6 (E.D. La. Oct. 15, 2014) (same); Johnson v. Cain, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (same); Evans v. Cain, No. 11-2584, 2012 WL 2565008, at *6-8 (E.D. La. Mar. 14, 2012) (same), adopted, 2012 WL 2565001 (E.D. La. July 2, 2012).

Where, as here, the procedural rules invoked by the state courts are "independent" and "adequate, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."

---

[80] State ex rel. Bruce, 190 So.3d at 1177; St. Rec. Vol. 8 of 8.

Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  However, "[t]o establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him."  Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted).  Here, petitioner makes no attempt to establish "cause" for the procedural default of this claim.  Further, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

When a petitioner has failed to meet the "cause and prejudice" test, a federal court should normally consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice."  That exception is a limited one which exists only if a petitioner makes a colorable showing that he is "actually innocent."  See Bagwell v. Dretke, 372 F.3d 748, 757 (5th Cir. 2004); Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998).  However, the Court notes that it is unclear whether the exception even applies at all to cases, such as this one, in which the defaulted claim relates merely to a matter concerning a noncapital sentence.

In Haley v. Cockrell, 306 F.3d 257 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals, after noting that a split exists among the circuits on that issue, held that the "actual innocence" exception is available to petitioners in noncapital proceedings who claim they were erroneously sentenced.  Id. at 265-66.  The Haley court further held that, when barred claims dealt with such alleged sentencing errors, the "actual innocence" requirement is met only when the petitioner shows that "he would have not been legally eligible for the sentence he received."  Id. at 264.  However, the Supreme Court subsequently vacated the Haley decision on other grounds and remanded the case to the Fifth Circuit.  Dretke v. Haley, 541 U.S. 386 (2004).  In so doing, the Supreme Court expressly declined to answer the question of whether the "actual innocence" exception applies to noncapital sentencing errors.  Id. at 393-94.

This Court does not attempt to answer the question left open by the Supreme Court. Nevertheless, even if the "actual innocence" exception is applicable to defaulted claims regarding such matters, petitioner has not alleged, much less shown, that he was legally ineligible for the sentence imposed, i.e. a term of twenty-five years without benefit of parole, probation, or suspension of sentence as a fourth offender.

Accordingly, for all of the foregoing reasons, the undersigned finds that petitioner's claim that his multiple offender sentence violated double jeopardy is procedurally barred.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Benjamin Bruce be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[81]

New Orleans, Louisiana, this ___25th___ day of January, 2019.


_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**

---

[81] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.